## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cachee Berg-Moton, : 
                Petitioner : 
                 : 
        v. : No. 1171 C.D. 2016
          : Submitted: November 23, 2016
Unemployment Compensation : 
Board of Review, : 
                Respondent : 


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED:  April 11, 2017**


Petitioner Cachee E. Berg-Moton (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board), dated May 25, 2016. The Board affirmed the Unemployment Compensation Referee's decision, which denied Claimant unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[1] relating to voluntary separation without cause of a necessitous and compelling nature. We reverse the Board's order.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Claimant filed for unemployment compensation benefits after voluntarily quitting her position as a customer service specialist for AT&T Mobility Services LLC (Employer). The Harrisburg Unemployment Compensation Service Center (Service Center) issued a Notice of Determination, finding Claimant ineligible for benefits under Section 402(b) of the Law. (Certified Record (C.R.), Item No. 5.) The Service Center reasoned that Claimant failed to meet her burden to prove a necessitous and compelling reason for quitting. (*Id.*) Claimant appealed the Service Center's determination, and a Referee conducted an evidentiary hearing.

Claimant testified that during her employment with Employer as a customer service specialist, she had ongoing issues with two other employees. (C.R., Item No. 9 at 13.) On October 2, 2015, she reported to her floor manager and her area manager that these two employees began sexually harassing her in September 2015. (*Id.* at 13-14.) Between October 8 and 12, 2015, Claimant called Employer's Asset Management department to report that someone had broken into her computer. (*Id.* at 17-18.) Claimant testified that her floor manager, Holly Decker, let one of the harassers read the reports Claimant made to Asset Management. (*Id.* at 18, 27-28.) Claimant again made a report to her floor manager and area manager in November 2015 about additional incidents of harassment. (*Id.* at 15.) On December 31, 2015, Claimant called the police several times in response to one of the employees following her and making a racial slur. (*Id.* at 16-17.) She also reported these incidences to Ms. Decker. (*Id.*) Claimant testified that she did not go to the union because one of the people harassing her was in the union. (*Id.* at 26-27.) Claimant testified that she took a two-week vacation and that she notified Ms. Decker that she was probably going to be

leaving her employment. (*Id.* at 8.) On February 8, 2015, Claimant notified Ms. Decker through text message that she resigned. (*Id.* at 24; C.R., Item 1, at 8.)

Ms. Decker testified on behalf of Employer. Ms. Decker testified that Claimant told her on January 22, 2016, that she planned to resign. (C.R., Item No. 9 at 34.) As to Claimant's complaints, Ms. Decker testified that Asset Protection looked into Claimant's computer to determine if someone was accessing information, but that Asset Protection could only review her computer for activity from the previous two days. (*Id.* at 35.) She testified that she told Claimant to contact the police at the end of December regarding her concerns about being followed and harassed, as it was outside of work. (*Id.*) Ms. Decker testified that Employer offered Claimant assistance through its Employer Assistance Program (EAP). (*Id.* at 36.) Ms. Decker also testified that Claimant could have reported the harassment to the union, to Employer's director (Dot Moran), to the Assistant Vice President Jack Wright (AVP), or to the online human resource center (HR One Stop). (*Id.* at 35-37.) Ms. Decker stated that she never received any report through HR One Stop indicating that Claimant had made a report. (*Id.* at 37.)

Following the hearing, the Referee issued a decision and order, affirming the Service Center's determination. (C.R., Item No. 10.) The Referee made the following findings of fact:

1. The claimant was working full time as a customer service specialist for AT&T Mobility Services LLC since July 9, 2012, earning $17.47 per hour.

2. The claimant alleges that she was being harassed by her coworkers since approximately October 2015.

3

3. The claimant first reported to her team manager and area manager that she felt harassed on or about October 2, 2015.

4. The claimant alleges her coworker's [sic] made such comments as "little miss virgin" and making reference as to the claimant being a "black jew."

5. The claimant continued to make complaints to her team manager and area manager.

6. The claimant contacted a federal EEOC agency to file a complaint.

7. The claimant also reported to her managers that she believed that her coworkers hacked into her computer and believe [sic] that the coworkers were tracking her movements via their cell phones.

8. The managers contacted the [A]sset [P]rotection department to check into the claimant's claims of her computer being hacked; however, no evidence was found to substantiate the claims.

9. The claimant contacted the police in regards to the coworkers tracking her movements. The police are currently investigating those allegations.

10. The claimant took a two week vacation on January 22, 2016, then sent her team manager a text February 8, 2016 resigning her position.

11. The claimant was becoming ill due to the alleged harassment.

12. The claimant could have utilized assistance from the director, AVP, union, or the employer's HR [O]ne [S]top for assistance when she was not satisfied with the lack of assistance from her managers; however, the claimant did not utilize these options.

4

13. Continuing work was available to the claimant had she not voluntarily left her employment.

(*Id.*) The Referee determined that Claimant voluntarily terminated her employment and failed to show cause of a necessitous and compelling nature for doing so. (*Id.*) The Referee explained that Claimant "has not shown that she made a good faith effort to take reasonable or necessary steps to overcome the obstacles to maintain her employment and benefits must be denied under Section 402(b) of the [L]aw." (*Id.*)

Claimant appealed to the Board, which affirmed the Referee's decision and order. (C.R., Item No. 12) In so doing, the Board adopted and incorporated the Referee's findings of fact and conclusions of law. Claimant now petitions this Court for review of the Board's order.

On appeal,[2] Claimant appears to contest the Board's decision in two ways. First, Claimant essentially argues that the Referee's finding of fact number 12, as adopted and incorporated by the Board, is not supported by substantial evidence of record. Finding of fact number 12 provides: "The claimant could have utilized assistance from the director, AVP, union, or the employer's HR [O]ne [S]top for assistance when she was not satisfied with the lack of assistance from her managers; however, the claimant did not utilize these options." (C.R., Item No. 12.) Further, Claimant contends that the Board erred as a matter of law in concluding that she did not have a necessitous and compelling reason for terminating her employment.

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

5

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in a light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

In an unemployment compensation case, it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Peak*, 501 A.2d at 1388.

We first address Claimant's argument that Referee's finding of fact number 12, adopted by the Board, is not supported by substantial evidence. Claimant contests the Referee's finding that she did not utilize options available to her for assistance. Claimant states that she followed work policy conduct by

6

contacting her supervisor, Ms. Decker, then the area manager, and she contacted the "800 hotline through HR One Stop on multiple occasions." (Petitioner's Br. at 17.) She further contends that she attended EAP counselling and took a two-week vacation at Ms. Decker's suggestion. Based on our review of Claimant's and Ms. Decker's testimony, we conclude that sufficient evidence exists to support the finding that Claimant knew that she could have utilized additional assistance from the director, AVP, union, or the employer's HR One Stop, if she was not satisfied with the assistance from her managers. Claimant attempts to show that this finding is unsupported by substantial evidence merely by pointing to contrary evidence in the record, which is insufficient to show that a finding is not supported by substantial evidence. *Verizon Pa., Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015).

Next, Claimant argues that the Board erred in concluding that she did not terminate her employment for a necessitous and compelling reason. We agree. Section 402(b) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's "unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 661 (Pa. Cmwlth. 2006). A claimant who voluntarily quits her employment "bears the burden of proving that necessitous and compelling reasons motivated that decision." *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999). To establish cause of a necessitous and compelling nature, a claimant must establish that

(1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve her employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008).

Sexual harassment and racial slurs may present adequate pressure to terminate one's employment, and a claimant need not be subjected to such language or conduct indefinitely. *Porco v. Unemployment Comp. Bd. of Review*, 828 A.2d 426, 428 (Pa. Cmwlth. 2003); *see also Peddicord v. Unemployment Comp. Bd. of Review*, 647 A.2d 295, 298 (Pa. Cmwlth. 1994). This Court has held that a claimant normally will not meet the fourth requirement—a reasonable effort to preserve employment—unless the claimant notifies the employer of the harassment. *Martin v. Unemployment Comp. Bd. of Review*, 749 A.2d 541, 544 (Pa. Cmwlth. 2000). Failure to report harassment, however, may be excused where the record evidence reveals that doing so would be futile. *Id.* A claimant also need not "notify the employer of each and every incident of harassment." *Unclaimed Freight Co. v. Unemployment Comp. Bd. of Review*, 677 A.2d 377, 379 (Pa. Cmwlth. 1996). Moreover, "there is a certain level of conduct that an employee will not be required to tolerate and the Court will not place all responsibility upon an employee to resolve his or her work dilemma. Ultimately[,] the employer bears the responsibility for eliminating harassment against employees in the workplace." *Comitalo v. Unemployment Comp. Bd. of Review*, 737 A.2d 342, 345 (Pa. Cmwlth. 1999).

Here, the Referee and Board focused their analysis on Claimant's failure to take reasonable or necessary steps to overcome the obstacles to maintain

8

her employment. Claimant, however, satisfied the notification requirement by bringing her complaints to her floor supervisor and her area manager in October, November, and December 2015. This notice afforded Employer the opportunity to rectify the situation. Claimant was not required to endure the alleged abusive behavior indefinitely. Her multiple reports to Employer provided the requisite notice to allow Employer to attempt to alleviate the harassment. Although Employer testified that Claimant could have utilized assistance from the director, AVP, union, or the employer's HR One Stop, it did not introduce into evidence a policy that would indicate Claimant was required to contact anyone other than her floor supervisor and area manager. Absent a policy that specified additional reasonable steps Claimant was required to take to preserve her employment, we cannot agree that Claimant failed to notify properly Employer. We conclude, therefore, that Claimant took reasonable and necessary steps to overcome the obstacles to maintain her employment.

Accordingly, we reverse the Board's order.

_____
P. KEVIN BROBSON, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cachee Berg-Moton,         :
          Petitioner    :
                      :
         v.           :    No. 1171 C.D. 2016
                      :
Unemployment Compensation  :
Board of Review,          :
          Respondent   :

## **O R D E R**

AND NOW, this 11th day of April, 2017, the order of the Unemployment Compensation Board of Review is hereby REVERSED.

_____
P. KEVIN BROBSON, Judge
