IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason W. Murphy,     :
      Petitioner  :
         :
  v.       : No. 1245 C.D. 2021
         : Submitted: March 10, 2023
Unemployment Compensation  :
Board of Review,     :
      Respondent :

BEFORE: HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE ELLEN CEISLER, Judge
     HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS        FILED: June 22, 2023

Jason W. Murphy (Claimant), appearing *pro se*, has petitioned this Court to review an adjudication of the Unemployment Compensation Board of Review (Board). The Board determined that Claimant was ineligible for unemployment benefits under Section 402(b) of the Unemployment Compensation Law (the Law).[1] On appeal, we consider whether Claimant established a necessitous and compelling reason to voluntarily quit his employment. After careful consideration, we affirm.

## I. BACKGROUND[2]

Claimant was employed in the welding department of Fehlinger Construction Group (Employer) from July 2019 until January 2020. On January 16,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

[2] Unless stated otherwise, we adopt the factual background for this case from the Board's decision, which is supported by substantial evidence of record. *See* Bd.'s Dec., 9/7/2021.

2020, Claimant voluntarily quit his employment without first providing Employer an explanation. Claimant applied for unemployment benefits, which the UC Service Center denied under Section 402(b) of the Law.[3] Thereafter, Claimant appealed to the Referee. Initially, the Referee dismissed Claimant's appeal as untimely pursuant to Section 501(e) of the Law.[4] However, Claimant further appealed to the Board, which vacated the Referee's determination and remanded for a full hearing.

At the hearing, Claimant addressed both the timeliness of his appeal as well as the substantive reasons for voluntarily leaving his employment. Claimant testified that he mailed his appeal on November 30, 2020, from his local post office at Harvey's Lake but conceded that it did not receive a postmark until several days later at the Lehigh Valley post office. Regarding the merits of his claim, Claimant testified that he was uncomfortable with the sexually explicit conversations and gestures of his coworkers. However, Claimant did not report this behavior to Employer because he thought that it would lead to ridicule or an awkward situation.[5]

Following the hearing, the Board concluded that the delay in Claimant's appeal was caused by the United States Postal Service and outside of Claimant's

---

[3] Section 402(b) provides that an employee is ineligible for compensation for any week where his unemployment is the result of his voluntary work departure without a necessitous and compelling cause. 43 P.S. §802(b).

[4] On November 13, 2020, the UC Service Center denied Claimant benefits. The envelope containing Claimant's appeal was postmarked December 3, 2020. At the time, Section 501(e) of the Law required appeals to be filed within 15 days of a notice of determination. 43 P.S. § 821(e).

[5] The Board did not credit the explicit details of Claimant's testimony, finding only that "the sexual nature of his co[]workers' conversations and gestures" made him uncomfortable. Bd.'s Dec. at 1. Nevertheless, Claimant described the final incident leading to his departure. According to Claimant, his supervisor, Tom Scouten, asked employees where they liked to ejaculate, and the employees began to discuss sexual activities they engaged in with their partners. *See* Notes of Testimony (N.T.) Hr'g, 5/17/21, at 6. This was not isolated behavior. Claimant described another instance where a coworker repeatedly inquired about the size of Claimant's penis, *see id.* at 9, and a separate occasion when a coworker placed "[his] penis on [Claimant's] shoulder." *Id.* at 8.

2

control. It therefore deemed Claimant's appeal timely. Nevertheless, the Board concluded that Claimant was ineligible for benefits under Section 402(b). The Board determined that Claimant's failure to report his concerns deprived Employer of an opportunity to remedy the situation. Thus, Claimant failed to establish a necessitous and compelling reason for leaving his employment. Claimant timely petitioned this Court for review.[6]

## II. ISSUE

Claimant contends that he voluntarily quit for a necessitous and compelling reason, *i.e.*, sexually explicit language and conduct by his coworkers that made him feel uncomfortable, unsafe, and hopeless. *See* Claimant's Br. at 8. *See generally* Claimant's Br. at 8-13. While Claimant concedes that he never filed a formal complaint, he suggests that his "verbal and nonverbal actions on many instances" demonstrated that such inappropriate words and behavior made him uncomfortable. *Id.* at 8. Moreover, according to Claimant, such conduct was incited by his superiors. *Id.* For these reasons, Claimant implicitly asserts that any formal complaint would have been futile. *See id.* at 8-12. Thus, Claimant concludes that the Board erred in denying him unemployment benefits. *Id.* at 13.[7]

---

[6] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. *Rose Tree Media Sch. Dist. v. Unemployment Comp. Bd. of Rev.*, 280 A.3d 1125, 1127 n.4 (Pa. Cmwlth. 2022).

[7] Although Claimant's brief lacks proper legal argument or citation to relevant legal authority, *see* Pa. R.A.P. 2119(a), we are generally inclined to construe *pro se* filings liberally. *Smithley v. Unemployment Comp. Bd. of Rev.*, 8 A.3d 1027, 1029 n.6 (Pa. Cmwlth. 2010). These defects in Claimant's brief do not preclude our meaningful appellate review. *Arnold v. Workers' Comp. Appeal Bd. (Lacour Painting, Inc.)*, 110 A.3d 1063, 1067 (Pa. Cmwlth. 2015).

# III. DISCUSSION

A claimant is ineligible for unemployment benefits if he voluntarily quits his job without a necessitous and compelling cause. Section 402(b) of the Law, 43 P.S. § 802(b). To satisfy the burden of proving a necessitous and compelling cause, a claimant must show (i) the existence of real and substantial pressure to terminate employment; (ii) that a reasonable person would have acted in the same manner; (iii) that he acted with ordinary common sense; and (iv) that he exercised reasonable efforts to preserve his employment. *Greenray Indus. v. Unemployment Comp. Bd. of Rev.*, 135 A.3d 1147, 1151 (Pa. Cmwlth. 2016).

Sexual harassment may constitute real and substantial pressure to voluntarily quit employment. *Serrano v. Unemployment Comp. Bd. of Rev.*, 149 A.3d 435, 440 (Pa. Cmwlth. 2016). "[T]here is a certain level of conduct that an employee will not be required to tolerate[,] and the Court will not place all responsibility upon an employee to resolve his or her work dilemma." *Id.* (citation omitted). Nevertheless, an employee usually must first notify an employer of the harassment before quitting to demonstrate that he has exercised reasonable efforts to preserve his employment. *Id.* Reporting affords an employer the opportunity to understand the nature of the claimant's objections and take prudent efforts to resolve the problem. *Collier Stone Co. v. Unemployment Comp. Bd. of Rev.*, 876 A.2d 481, 484 (Pa. Cmwlth. 2005).

An employee need not report sexual harassment if the employee reasonably believes that reporting would be futile. *Martin v. Unemployment Comp. Bd. of Rev.*, 749 A.2d 541, 544 (Pa. Cmwlth. 2000) (citing *Peddicord v. Unemployment Comp. Bd. of Rev.*, 647 A.2d 295 (Pa. Cmwlth. 1994)). For example, in *Peddicord*, an employer's regional manager made sexually offensive comments

4

to an employee, including on one occasion in front of the employee's direct supervisor, who did nothing. *Peddicord*, 647 A.2d at 298. Under these circumstances, this Court imputed knowledge of the harassment to the employer and absolved the employee of any obligation to report the harassment prior to her voluntary resignation. *Id.* (concluding that "the claimant had every reason to believe that reporting [the harassment] would have produced no satisfactory result").

However, we reached the opposite result in *Johnson v. Unemployment Compensation Board of Review*, 725 A.2d 212 (Pa. Cmwlth. 1999). There, a store manager made sexual advances toward the claimant. *Id*. at 213. The claimant objected, and the manager agreed to change her conduct; however, the behavior continued. *Id*. The claimant did not report the ongoing harassment to higher level managers before eventually quitting. *Id*. The Board denied benefits, and this Court affirmed, concluding that the claimant had failed to take common sense action to alleviate the harassment. *Id.* at 214-15 (observing that the claimant did not attend a scheduled meeting with the employer's area supervisor on the day she quit). The Court stated that reasonable efforts "necessarily include reporting complaints of sexual harassment to an employer representative other than the perpetrator of the conduct[,]" provided the perpetrator is subject to the employer's supervision. *Id*.

In this case, the facts align more closely with *Johnson* than *Peddicord*. The Board found that the sexual nature of Claimant's coworkers' conversations and gestures was offensive to Claimant. *See* Bd.'s Dec. at 1. There is ample support for this finding in the record. *See* Notes of Testimony (N.T.), Hr'g, 5/17/21, at 6-9. During his testimony, Claimant also offered reasons for not reporting the offensive conduct to Employer. Initially, for example, Claimant testified that he did not feel comfortable telling his immediate supervisor, because the supervisor was a

perpetrator of the offensive conduct. *Id.* at 6 ("Tom is actually my neighbor, so I didn't want to make things extra weird in daily life.").[8] Claimant also suggested that there should be no need to report such behavior because "[t]hat's not okay in any workplace that I know of." *Id.* at 7. In its findings, the Board specifically credited Claimant's concern that he would be ostracized. *See* Bd.'s Dec. at 1; N.T. Hr'g at 7 ("You just get made fun of for not being part of the group.").

Under these circumstances, Claimant was not required to report the offensive conduct to his immediate supervisor, but he should have taken other reasonable steps to inform Employer of the harassment. *Johnson*, 725 A.2d at 214. Clearly, he did not. When asked if he could have reported the harassment to the human resources department, Claimant conceded that he did not know if Employer had one. N.T. Hr'g at 8.[9] When asked if he ever communicated with the engineer who supervises the welding department, Claimant replied, "I don't know who that is." *Id.* at 9. When asked if he had ever voiced his complaints to the company owners, Claimant stated, "I never met them either." *Id.* at 9-10. Finally, when asked if he reported his complaints to the company office where he applied for his job, Claimant conceded, "No, I did not." *Id.* at 10.

---

[8] The Board did not credit specifically the supervisor's participation in the harassment but did credit Claimant's concern that reporting the harassment would "create an awkward situation[.]" Bd.'s Dec. at 1.

[9] Claimant then testified that he could not approach Justin Scouten, Tom's brother and "the guy above" Tom. N.T. at 8. The hierarchy within Employer's welding department is not entirely clear from the record. Nevertheless, this Court has recognized that a supervisor's familial relationship to a claimant's perpetrator is not sufficient reason to excuse a claimant's failure to report sexual harassment. *Butler v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 327 C.D. 2011, filed Aug. 12, 2011) (unreported), slip op. at 6, 2011 WL 10841568, at *3 (the claimant was not excused from reporting sexual harassment where the employer's father was the claimant's perpetrator). We cite *Butler* for its persuasive value. *See* Pa. R.A.P. 126(b)(1); 210 Pa. Code § 69.414(a).

Based on the express findings of the Board, and the testimony highlighted above, we decline to impute knowledge of Claimant's sexual harassment concerns to Employer. *See Peddicord*, 647 A.2d at 298. Claimant's failure to report this offensive conduct deprived Employer of an opportunity to resolve the problem. *Collier Stone Co.*, 876 A.2d at 484. The record does not support a finding that Claimant's reticence was due to a reasonable belief that reporting would be futile but rather that such effort may lead to an awkward situation. Thus, we agree that Claimant failed to establish a necessitous and compelling reason for quitting. *Greenray Indus.*, 135 A.3d at 1151.

For these reasons, we affirm the Board.

LORI A. DUMAS, Judge

7

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason W. Murphy,                                :
                    Petitioner                  :
                                                :
        v.                                      :    No. 1245 C.D. 2021
                                                :
Unemployment Compensation                       :
Board of Review,                                :
                    Respondent                  :

# **O R D E R**

AND NOW, this 22nd day of June, 2023, the decision of the Unemployment Compensation Board of Review, entered September 7, 2021, is AFFIRMED.

_____
LORI A. DUMAS, Judge